IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FRANK TYPPI,                          )
                                      )
          Plaintiff,                  )
                                      )
                                      )
     v.                               ) Case 13 CV 3930
                                      )
                                      )
PNC BANK, NATIONAL ASSOCIATION;       )
PIERCE & ASSOCIATES, P.C.; CROWLEY &  )
LAMB, P.C.,                           )
                                      )
          Defendants.                 )
                                      )


<u>MEMORANDUM OPINION AND ORDER</u>


Plaintiff Frank Typpi has filed a seven-count amended
complaint against PNC Bank, National Association ("PNC"), and its
attorneys, Pierce & Associates, P.C. ("Pierce"), and Crowley &
Lamb, P.C. ("Crowley"), asserting various claims relating to
PNC's service of Plaintiff's mortgage loan, including breach of
contract, breach of fiduciary duty, and violations of the Fair
Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.;* the
Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.;* and the
Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* All
Defendants have now moved to dismiss the counts asserted against
them pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure: Defendant PNC moves to dismiss Counts I, IV, V, VI,

VII; Pierce moves to dismiss Count II; and Crowley moves to dismiss Count III.  For the reasons that follow Defendants' motions to dismiss are granted in part and denied in part.

I.

Here, I accept all well-pleaded allegations in the First Amended Complaint ("FAC") and draw all inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

In 1990, Plaintiff obtained a loan to purchase a single-family home from PNC's predecessor and proceeded to make his scheduled monthly mortgage payments for the subsequent twenty one years. *See* FAC [#40] at ¶¶ 10, 19.  PNC acquired the loan in 2009 or 2010. *Id.* ¶ 22.

Problems with the loan arose in January 2010, when Plaintiff began receiving telephone calls from PNC informing him that his monthly mortgage payments were late. *Id.* at ¶ 31.  On July 27, 2010, PNC force-placed insurance on the property and deducted the cost from funds in Plaintiff's escrow account. *Id.* at ¶¶ 41-42. In September 2010, PNC again informed Plaintiff that his monthly payment was late, which prompted Plaintiff to remit a payment immediately on-line. *Id.* at ¶¶ 46-48.  He continued to dispute various charges as well as the status of his insurance on the property in phone calls with PNC. *Id.* at ¶ 50.  Despite Plaintiff's communications with PNC disputing the status of his

loan, PNC filed for foreclosure of the property in state court of Cook County in March 2011, claiming that Plaintiff was in default on the subject note and mortgage due to his failure to make monthly mortgage payments from November 2010 through the date the complaint was filed. *Id.* at ¶¶ 61-62. Plaintiff disputed that debt in writing on April 3, 2011. *Id.* at ¶ 65. On July 2, 2011, Plaintiff tendered to a PNC representative $5,000 to satisfy the remaining debt on the note and mortgage, which Plaintiff was informed totaled $4,700. *Id.* at ¶ 75. PNC, however, subsequently returned that check, and obtained a default judgment of foreclosure and sale on September 14, 2011, after informing Plaintiff, through Pierce, that the case would be dismissed, so he did not need to appear in court. *Id.* at ¶ 80. The property was sold at a judicial auction, and PNC used the proceeds from that sale to satisfy the principal balance and the additional fees, costs and charges that it had assessed to Plaintiff's account. *Id.* at ¶¶ 82-83. On June 28, 2012, the state court judge vacated the judgment of foreclosure and sale. *Id.* at 89. Thereafter, PNC retained Crowley as additional counsel in the foreclosure action. *Id.* at ¶ 90. Plaintiff alleges that PNC, through its counsel, continued to harass Plaintiff through the state court lawsuit and engaged in misconduct, which gives rise to the claims he makes against PNC, Pierce, and Crowley in the present lawsuit. *Id.* at ¶¶ 91-106.

II.

Each of the Defendants attacks the legal sufficiency of Plaintiff's claims under Fed. R. Civ. P. ("Rule") 12(b)(6). "To survive a motion to dismiss, the plaintiff must do more than simply recite elements of a claim; the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical Coll. of Wis.*, 657 F.3d 496, 502 (7th Cir. 2011) (internal citations omitted). "The plaintiff need not, however, plead detailed factual allegations." *Id.* (internal citations omitted). While I accept "as true all well-pleaded allegations and draw[] all reasonable inferences in the plaintiff's favor," I am not required "to accept as true legal conclusions, or threadbare recitals of the elements of the cause of action, supported by mere conclusory statements." *Ray v. City of Chicago*, 629 F.3d 660, 662 (7th Cir. 2011) (internal citations omitted). "While the federal pleading standard is quite forgiving, our recent decisions have emphasized that 'the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* at 662-63 (internal citations omitted).

**Breach of Contract Claim Against PNC**

To sustain a breach of contract claim, Plaintiff must allege facts sufficient to support the following elements: "(1) the

existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (citing *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill.App.3d 752, 286 Ill.Dec. 734, 814 N.E.2d 960, 967 (Ill.App.Ct. 2004)).

In Count I, Plaintiff alleges that PNC breached the loan agreement by failing to properly account for his timely payments and wrongfully holding Plaintiff in default. Plt. Resp. Br. [#57] at 9. He also alleges that PNC failed to conduct its affairs in good faith. PNC argues that Plaintiff cannot sustain his breach of contract claim because he failed to perform under the contract when he failed to make the required payments, thus he cannot demonstrate "substantial performance" as required by Illinois contract law. It urges that an Affidavit from a PNC vice president, attached as an exhibit to the FAC, proves that Plaintiff failed to make the September 2010 payment, because he testified therein that Plaintiff "did not make any payment on the Subject Loan in September 2010," and that "funds [Plaintiff remitted] to PNC on October 15, 2010 … "were applied to the September 1, 2010 payment." *See* Ex. O (at Ex. A) [#40-15] to FAC [#40] at ¶¶ 13-14. They also argue that Plaintiff has failed to prove that he actually made the September 2010 payment.

In response, Plaintiff argues that he has alleged his own

complete performance under the mortgage contract. Specifically, he alleges that he tendered all of the payments required.

In deciding a motion to dismiss, I "consider documents attached to the complaint as part of the complaint itself," and "[s]uch documents may permit the court to determine that the plaintiff is not entitled to judgment." *Reger Dev.*, 592 F.3d at 764. However, PNC's argument that this claim should be dismissed because the so-called payment history attached to the Complaint does not prove that Plaintiff made the September 2010 is unavailing. PNC points to the affidavit of PNC's vice president attached to the complaint, but that is insufficient to prove that Plaintiff missed his September 2010 payment, because no loan documents supporting that statement are attached. *See* Ex. O at Ex. A, ¶¶ 13-14 [#40-15]. I must accept Plaintiff's allegation that he made the September 2010 payment for the purposes of the motion to dismiss, and PNC's argument that he failed to attach sufficient proof of that payment is not fatal to Plaintiff's claim at this stage of the proceeding. Here, Plaintiff has alleged sufficient facts regarding the breach of contract claim to survive PNC's motion to dismiss.

Plaintiff also claims that PNC breached its duty of good faith and fair dealing, when, in the exercise of its discretion, it failed to manage Plaintiff's escrow account properly, "illegally force-place insurance twice, it levied unauthorized

fees and costs to Plaintiff's account, and it converted funds from Typpi's tax-escrow to pay those amounts." Plt's Resp. Br. [#57] at 9.

The implied covenant of good faith and fair dealing is "implied in every contract." *Gore v. Indiana Ins. Co.*, 376 Ill.App.3d 282, 268, 876 N.E.2d 156, 161 (Ill.App.Ct. 2007). The purpose of the implied covenant of good faith and fair dealing "is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract." *Id.* I note that "[u]nder Illinois law, a claim for breach of the implied covenant of good faith and fair dealing can be subsumed within a breach of contract claim." *Playboy Enterprises Intern., Inc. v. Smartitan (Singapore) Pte Ltd.*, No. 10-cv-4811, 2011 WL 3839711, at *2 (N.D. Ill. Aug. 26, 2011). Here, because Plaintiff's breach of contract claim survives PNC's motion to dismiss, and he has claimed that PNC acted "arbitrarily and unfairly," his breach of the implied covenant of good faith and fair dealing claim also survives.

**Violations of Fair Debt Collection Practices Act Claim Against Pierce, Crowley, and PNC**

In Counts II, III, IV, Plaintiff alleges that PNC, along with Pierce and Crowley, violated various sections of the Fair

Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq*. All three Defendants argue that Plaintiff cannot sustain this claim because the FDCPA only applies to consumer debt, and the obligation at issue is a business debt because the subject mortgage was for a rental property, not for Plaintiff's primary use as his residence.

"The term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes..." 15 U.S.C. § 1692a(5). All parties agree that the relevant point in time for determining the character of the debt is when the loan is made. *See Miller v. McCalla, Raymer, Padrick, Nichols & Clark, L.L.C.*, 214 F.3d 872, 874-75 (7th Cir. 2000) (explaining that courts assess the debt at issue under the FDCPA "when it arose rather than when it is to be collected"). For these claims to survive a motion to dismiss, Plaintiff must allege that he acted as a consumer in incurring the obligation.

Defendants urge that Plaintiff has not and cannot prove that the mortgage was a consumer debt, because it was for a property that Plaintiff intended from the outset to use as a rental property. They point to the mortgage document executed on August 22, 1990, that includes, at paragraph 23, an "assignment of

rents", as proof that the mortgage was for a rental property. Ex. A [#40-1] to FAC [#40]. They also note that Plaintiff has failed to plead specifically that the mortgage was for property that he intended to use as his primary residence.

Plaintiff counters that the underlying mortgage was for a residential transaction that he took out in his "own name, concerned his personal finances, benefitted him personally, and was reported on his personal credit report," thus it was "a debt incurred for personal, family and household purposes." Plt. Resp. Br. [#57] at 4. He further admits that he *later* rented the property out as evidenced by his Landlord Insurance Policies from 2008 – 2011, but maintains that in August 1990, the subject property was a consumer purchase. As for the "assignment of rents" rider attached to the August 4, 1990 mortgage, Plaintiff argues that it is related to "superseded transactions that have no bearing on the August 22, 1990 transaction." *Id.* at 5. Moreover, at the time he obtained the loan, there was no assignment of rents rider, because he did not intend to rent the property at that time. He also offers a HUD Settlement Statement, a Loan Disbursement Statement, and a Truth in Lending statement, all dated August 1990, each of which indicates that Plaintiff's address and that of the subject property were one in the same, to support his contention that the purchase was consumer in nature. *Id.*

The Seventh Circuit has stated that where the "relevant transactions" concern the purchase of "family homes … on that general level, there can be little doubt that the subject of those transactions had a personal, family or household purpose." *Newman v. Boehm, Pearlstein & Bright, Ltd.*, 119 F.3d 477, 481 (7th Cir. 1997). Here, while Plaintiff has not alleged that he actually lived in the house right after signing the mortgage documents, he has alleged that the debt was to purchase property for his personal use, and the documents Defendants point to are not conclusive proof that Plaintiff planned to rent the property from the outset. Moreover, a full investigation of nature of the debt requires further development of the factual record. For now, however, his allegations are sufficient to determine that the debt was consumer in nature.

Having determined that the debt at issue was a consumer debt, I now turn to each Defendant's additional arguments in support of dismissing this claim.

**Defendant PNC**

Defendant PNC further attacks this claim, arguing that it is not a debt collector under the FDCPA, and thus cannot be held liable for a violation arising under the Act. Under the FDCPA, a "'debt collector' means any person who … regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The

statute specifically excludes from the definition of "debt collector" any party collecting a debt that "was not in default at the time it was obtained by such person" or one that was "originated by" the purported "debt collector." 15 U.S.C. 1692a(6)(f)(ii)-(iii).

Here, PNC is not a "debt collector" but a "creditor" as defined by the FDCPA, because it "offer[ed] or extend[ed] to offer credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4). *See Nielsen v. Dickerson*, 307 F.3d 623, 631 (7th Cir. 2002) (where party does not undertake "to collect anyone's debts but its own" it would not normally constitute a "debt collector"). Because Defendant PNC is not a "debt collector" it cannot be held liable under the FDCPA, and Count IV is dismissed.

**Defendant Pierce**

Pierce argues that Plaintiff's various FDCPA claims against it are barred by the one-year statute of limitations. Under the FDCPA, a plaintiff must bring "an action to enforce liability … within one year from the date on which the violation occurs." 15 U.S.C. ("Section") 1692k(d). Pierce argues that because Plaintiff's Complaint was filed on May 28, 2013, any wrongdoing that occurred prior to May 28, 2012 would be barred.

Plaintiff claims that Pierce's "alleged wrongful collection activities and tactics" continued into March 2013. Plt. Resp.

11

Br. [#57] at 15. He claims that Pierce "continued to misrepresent the status of the debt and attempted to collect unauthorized fees on June 14, 2012—Pierce even attempted to confirm the judicial sale and have a court approve those illegal fees on June 28, 2012." *Id.* He has alleged that Pierce's actions "lasted through at least June 2012 when it continued to prosecute the foreclosure and pursue confirmation of a foreclosure sale used to satisfy an unverified debt." FAC [#40] at ¶ 130.

To determine the date on which the violation occurs and the point at which the statute of limitations begins to run on Plaintiff's FDCPA claim against Pierce, the court must determine the specific violations alleged against Pierce under the specific sections of the FDCPA.

Section 1692g(b) of the FDCPA provides that when a consumer notifies a debt collector in writing that a debt is disputed, "the debt collector shall cease collection of the debt … until the debt collector obtains verification of the debt or a copy of a judgment … and a copy of such verification or judgment … is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b). Because the FDCPA bars any debt collection activity until verification, a cause of action under Section 1692g(b) accrues when the debt is pursued prior to verification. *See Jones v. U.S. Bank Nat. Ass'n*, No. 10 C 0008, 2011 WL 814901, at *4 (N.D. Ill. Feb. 25, 2011) (internal citations omitted) ("Courts

addressing the issue of accrual under § 1692g(b) have found, because the FDCPA places no time limit on a debt collector's verification of an outstanding debt, but merely prohibits any debt collection activity until verification occurs, a cause of action does not arise until the illegal debt collection activity occurs."). Based on the allegations in the FAC, Plaintiff first disputed the debt in writing on April 3, 2011, and thereafter, Pierce continued to pursue debt collection. Thus, a cause of action arising under Section 1692g(b) accrued when Pierce attempted to collect the debt following April 3, 2011, which occurred well before the one-year statute of limitations as it contacted Plaintiff and pursued the foreclosure action in state court. Therefore, no claim under Section 1692g survives the motion to dismiss.

Section 1692d prohibits debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Plaintiff claims that Pierce violated this section when it "advised [Plaintiff] on numerous occasions that he did not need to attend court … and that his account would be updated to reflect the payments, and that the case would be dismissed." FAC [#40] at ¶¶ 132-133. According to the allegations in the First Amended Complaint, Pierce made those representations to Plaintiff in September 2011. FAC [#40] at ¶

79.  Because those alleged violations occurred well before the one-year statute of limitations, Plaintiff cannot maintain his claim against Pierce for a violation of 15 U.S.C. § 1692d.

Plaintiff also argues that Pierce violated Sections 1692f(1), 1692e, and 1692g(a), when it continued to misrepresent the amount of the debt and included in the alleged total the attorney fees, unauthorized fees and costs, as well as costs to repay force-placed insurance.  FAC [#40] at ¶¶ 135-37.  Section 1692f(1) forbids debt collectors from attempting to collect "any amount … unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).  Section 1692e prohibits the use of "any false, deceptive or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.  And Section 1692g(a) provides that

> [w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collection shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing – (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of

such verification or judgment will be mailed to the
consumer by the debt collector.

Both parties have addressed the allegations that Pierce violated
Sections 1692f, 1692e, and 1692g(a) en masse. Plaintiff alleges
that Pierce violated these sections of the FDCPA during the
course of the litigation of the foreclosure lawsuit in state
court. Specifically, Plaintiff alleges that Pierce violated
Sections 1692f(1) and 1692e when it lumped together the
unauthorized fees and costs in with the principal debt
obligation, which he claims was a misrepresentation of the debt.
FAC [#137] at ¶ 136. He also asserts that Pierce included
unauthorized fees and costs "in all reinstatement and payoff
statements" it sent to Plaintiff in violation of Section
1692g(a). *Id.* at ¶ 137. The accrual of these claims, however,
occurred well before the June 2012 dates. According to the FAC,
Pierce first assessed "unauthorized fees" on March 1, 2011, and
included them in the reinstatement and payoff statements on May
1, 2011. FAC [#40] at ¶¶ 59, 69. Thus, the clock began to run on
this claim in 2011, so these claims are time-barred.

Plaintiff also alleges that Pierce violated Sections 1692k©
and 1692c(b). Section 1692k© does not provide a cause of action,
but rather offers an affirmative defense to debt collectors,
providing that they "may not be held liable in any action … if
the debt collector shows by a preponderance of the evidence that

the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k©; *see Nielsen v. Dickersen*, 307 F.3d 623, (7th Cir. 2002) (noting that Section 1692k© is a "bona fide error defense" available to creditors who bear the burden of proof that the violation of the FDCPA "was not intentional").

Section 1692c(b)provides that a debt collector may not

without the prior consent of the consumer given directly to the debt collector … communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b). Plaintiff alleges that Pierce impermissibly communicated false, deceptive, and private information to third parties," including his rental tenants. The date that Pierce allegedly made those disclosures are not clear from the FAC; Plaintiff does allege that "[u]nbeknownst to [Plaintiff] at the time, beginning around February 2011 and continuing through foreclosure, PNC hired an agent to enter the subject property and make contact with the tenants." FAC [#40] at ¶ 67. This is the only allegation in the FAC related to communication with his rental tenants, and because the February 2011 date occurred more than one year before he filed this

16

Complaint, that claim is time-barred as well.

**Defendant Crowley**

In Count III, Plaintiff alleges that Crowley violated the FDCPA by participating in the state court foreclosure litigation after Plaintiff had disputed the debt in writing. The Supreme Court has confirmed that the FDCPA applies to lawyers regularly engaged in consumer debt collection activity on behalf of creditors, "even when that activity consists of litigation." *Heintz v. Jenkins*, 514 U.S. 291, 299, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). The parties do not dispute that Crowley is a debt collector under the statute. As with the FDCPA claims against Pierce, I must analyze each section to determine whether Plaintiff has sufficiently stated a claim.

As for Section 1692g, Plaintiff claims that he "sufficiently disputed the debt to trigger Crowley's duty to verify it under § 1692(g) as well as cease collection actions until it provided verification of the debt." FAC [#40] at ¶ 147. Likewise, he claims Crowley violated Sections 1692d, 1692f, 1692g, and 1692g(a) through its conduct in the state court litigation by filing "filing motions, pleadings and affidavits with false statements in an attempt" to collect the debt and harass Plaintiff. FAC [#40] at ¶ 151. Crowley argues that these claims fail because the only actions it took were to file papers in the foreclosure action, and because those actions were "defensive in

17

nature," it is not liable for furthering collection activities. Def. Br. in Supp. [#42] at 6.

The Seventh Circuit has questioned the applicability of the FDCPA to state court filings, where, as here, a plaintiff's claims are premised on the activities of law firms during the course of state court litigation. *See Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 472 (7th Cir. 2007) (noting that it is "far from clear that the FDCPA controls the contents of pleadings filed in state court."). In *Beler*, the Seventh Circuit expressly declined to decide that issue, specifically with regard to § 1692e. *Id.* at 473 ("We postpone to some future case … the decision whether § 1692e covers the process of litigation."). In the wake of *Beler*, several district courts have allowed plaintiffs to proceed with FDCPA claims based on alleged misrepresentations or unfair collection practices in state court proceedings. *See e.g., Guevara v. Midland Funding NCC-2 Corp.*, No. 07 C 5858, 2008 WL 4865550, *5 (N.D. Ill. Jun. 20, 2008) ("Therefore, the court treats as true Guevara's allegations that Defendants made false statements and employed unfair collection methods in its state court collection action."); *Parkis v. Arrow Financial Services, LLS,* No. 07 C 410, 2008 WL 94798, at *8 (N.D. Ill. Jan. 8, 2008) (recognizing that "[t]he FDCPA does not authorize any litigation privileges" and

refusing to bar the lawsuit based "on grounds of litigation privilege"); *Foster v. Velocity Investments, LLC,* No. 07 C 0824 and 07 C 2989, 2007 WL 2461665, at *2 (N.D. Ill. Aug. 24, 2007) ("Although *Beler* questioned the applicability of the FDCPA to state court filings, the Seventh Circuit chose not to decide that issue."). In light of the fact that Seventh Circuit law does not preclude FDCPA claims based on attorneys' actions in state court proceedings, and that *Heintz* expressly permits FDCPA claims based on litigation activity, Plaintiff's claims that Crowley violated Sections 1692g, 1692d, 1692f, 1692g, and 1692g(a) through its filings in state court survive the motion to dismiss.

As for Plaintiff's claim that Crowley violated Section 1692k©, again, that section does not provide a cause of action, but rather offers an affirmative defense, "the bona fide error defense", to debt collectors.

Finally, Plaintiff claims that Crowley violated Section 1692e, which prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). Plaintiff alleges that Crowley reported false information regarding the subject loan to credit reporting agencies and "continues to report that the property has been sold

at a foreclosure sale and has failed to correct improper credit reporting." FAC [#40] at ¶ 163. Crowley argues that it has made no such false reports. Viewing the allegations in the light most favorable to Plaintiff and assuming they are true as I must, they are sufficient to state a claim.

### *Breach of Fiduciary Duty Claim Against PNC*

In Count V, Plaintiff argues that PNC breached its fiduciary duty to Plaintiff when it abused and mismanaged his escrow account and funds. "In order to state a claim for breach of fiduciary duty, a plaintiff must allege (1) a fiduciary duty exists; (2) the fiduciary duty was breached; and (3) such breach proximately caused the injury of which plaintiff complains." *Sklodowski v. Countrywide Home Loans, Inc.*, 358 Ill.App.3d 696, 705, 832 N.E.2d 189, 198-99, (Ill.App.Ct. 2005). PNC urges that this claim should be dismissed because Plaintiff has not and cannot allege facts that demonstrate that a fiduciary relationship existed between the parties. Under Illinois law, "[a]n escrowee has been described as a 'trustee' of both the party making the deposit of a property and the party for whose benefit it is made, and therefore, has a duty to act impartially toward all parties … Like a trustee, the escrowee owes a fiduciary duty to act only in accordance with the terms of the escrow instructions." *Johnson v. Maki and Assocs., Inc.*, 289

Ill.App.3d 1013, 1028, 682 N.E.2d 1196, 1200 (Ill.App.Ct. 1997).
Plaintiff acknowledges that the mortgage-mortgagor relationship
does not automatically create a fiduciary relationship, but
claims the particular circumstances of this case created
fiduciary duties. Plt. Resp. Br. [#57] at 16.  In his FAC,
Plaintiff alleges that a "fiduciary duty existed between PNC and
[Plaintiff]," and that "PNC breached its duty by using escrow
funds to pay premiums for force-placed insurances" that were
"unauthorized and excessive." FAC [#40] at ¶¶ 170, 174.   He
further alleges that PNC's breach of its duty resulted in
Plaintiff "being assessed illegal fees and charges, interest,
damage to his credit report."  *Id.* at ¶ 179.  At this stage of
the proceeding, Plaintiff has alleged sufficient facts to survive
a motion to dismiss on his breach of fiduciary duty claim against
PNC.

### *Violation of the Illinois Consumer Fraud Act ("ICFA")*

"The [Illinois Consumer Fraud Act] 'is a regulatory and
remedial statute intended to protect consumers, borrowers, and
business persons against fraud, unfair methods of competition,
and other unfair and deceptive business practices.'" *Siegel v.
Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (quoting
*Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960, 201
Ill.2d 403, 266 Ill.Dec. 879 (Ill. 2002)).

**Unfair Conduct**

Plaintiff alleges first that PNC violated the ICFA when it engaged in "unfair" conduct when it failed to acknowledge Plaintiff's timely payments and when it accepted Plaintiff's redemption payment only to return it before obtaining a judgment of foreclosure. He also cites PNC's illegally force-placing insurance, adding on late fees, failing to accurately represent the status of the loan and by interfering with Plaintiff's relationship with his tenants. Plt. Resp. Br. [57] at 17-18. He argues that "taken as a whole over several years, PNC's conduct was so unethical and unending that [Plaintiff] had no choice but to submit." Plt. Resp. Br. [#57] at 18.

PNC argues that Plaintiff cannot sustain this claim because he failed to allege how the unfair practices proximately caused his injury. It also argues that Plaintiff's claims under the ICFA fail because the facts are the same as those alleged under his breach of contract claim. It urges that "[a] breach of a contractual promise, without more, is not actionable under the ICFA." PNC Reply Br. [#65] at 8.

Courts that have interpreted the meaning of "unfair practice" have held that a plaintiff states a claim under the ICFA where the defendant's conduct gave plaintiff no reasonable alternative to avoid a charge or penalty. *See Hill v. PS Ill.*

*Trust,* 856 N.E.2d 560, 569, 368 Ill.App.3d 310, 305 Ill.Dec. 755 (Ill.App.Ct. 2006) (finding unfair conduct where defendant failed to give plaintiff notice that his property was being sold and by failing to inform him of the outcome of the lien sale); *see also Centerline Equip. Corp. v. Banner Pers. Serv.*, 545 F.Supp.2d 768, 780 (N.D. Ill. 2008) ("Conduct is oppressive [under the ICFA] only if it imposes a lack of meaningful choice or an unreasonable burden on its target."). The factors that a court must determine to evaluate whether a business practice is unfair are: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 417-18, 775 N.E.2d 951, 961 (Ill. 2002). "Because neither fraud nor mistake is an element of unfair conduct under Illinois' Consumer Fraud Act, a cause of action for unfair practices under the Consumer Fraud Act need only meet the notice pleading standard of Fed. R. Civ. P. ("Rule") 8(a), not the particularity requirement in Rule 9(b)." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech.*, 536 F.3d 663, 670 (7th Cir. 2008).

Plaintiff's ICFA claim sufficiently describes an unfair practice. As required, Plaintiff has pleaded that there was no way for him to avoid the fees since they were deducted without

his knowledge or authorization.  Moreover, his attempts to remedy the charges were frustrated by mixed signals and conflicting information from PNC representatives.  He also alleged that PNC accepted a redemption payment only to return it right before obtaining a judgment of foreclosure.  If proven, the conduct alleged by Plaintiff would meet the statutory definition of unfairness.

**Deceptive Conduct**

Plaintiff also alleges that PNC engaged in deceptive conduct when it engaged in the following actions: (1) made material misrepresentations about the status of the loan and the hazard insurance; (2) made material misrepresentations regarding the amount owed on the loan, as well as the amounts that Plaintiff had failed to pay; (3) force-placed insurance, fees, and costs that were in excess of the amount contemplated by the mortgage contract; (4) failed to provide clear and accurate disclosures regarding the status of the loan and amounts due to cure the default; and (5) accepted Plaintiff's $5,000 to pay off the loan in full, then subsequently returned it and obtained a judgment of foreclosure and sale. FAC [#40] at ¶¶ 183-187.

To succeed on his claims that PNC engaged in deceptive conduct, Plaintiff must show "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely

on the deception; (3) the deception occurred in the course of trade or commerce; and (4) the consumer fraud proximately caused the plaintiff's injury." *White v. DaimlerChrysler Corp.*, 368 Ill.App.3d 278, 282, 856 N.E.2d 542, 546 (Ill.App.Ct. 2006). "To bring a civil suit for damages, the Act requires that the plaintiff suffer actual damages." *Id.* (internal citations omitted). PNC argues that Plaintiff has not met the heightened pleading standard of Rule 9(b) for this claim which sounds in fraud.

Because a claim for deceptive conduct under the ICFA sounds in fraud, Plaintiff is required to plead with particularity facts such as who made the fraudulent statements or undertook the fraudulent actions, when they were made or undertaken, and how they were made or undertaken. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech.*, 536 F.3d 663 (7th Cir. 2008) (A complaint was properly dismissed where it "failed to plead with particularity the who, when and how of the alleged frauds, all of which are required by Rule 9(b) for allegations of fraud."). "Under Rule 9(b), a plaintiff must state with particularity 'all averments of fraud or mistake', and '[t]he circumstances of fraud or mistake include the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation

was communicated to the plaintiff.'" *Id.* at 668 (quoting *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997)). Plaintiff has failed to provide with specificity the dates of the communications, names of the persons who made the allegedly deceptive communications, or the specific contents of the information contained within those communications. His vague assertions devoid of names, dates or other specific information will not suffice.

### *Violation of the Fair Credit Reporting Act by PNC*

Finally, Plaintiff alleges that PNC violated Section 1681s-2(b)(1)(B) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*, which provides a private right of action against a "furnisher of information" that is "negligent in failing to comply with any requirement of the Act." 15 U.S.C. § 1681o. At issue here is the requirement that a "furnisher of information" must "review all relevant information provided by the consumer reporting agency" once the consumer reporting agency disputes the information therein. 15 U.S.C. § 1681s-2(b)(1)(B). The parties do not dispute that PNC was a "furnisher of information" under the FCRA, and thus it was required to "(1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided to it by the consumer reporting agency; (3) report the results of the investigation to

26

the agency; and (4) if the information is found to be inaccurate or incomplete, report the results to all consumer reporting agencies to which it originally provided the erroneous information." *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005). The Seventh Circuit has noted that "[w]hether a defendant's investigation is reasonable is a factual question normally reserved for trial." *Id.*

PNC argues that this claim should be dismissed because the Plaintiff admits that PNC communicated with the reporting agencies after receiving notice of Plaintiff's dispute about the delinquent debt. PNC views that admission as proof that PNC "review[ed] all relevant information" related Plaintiff's disputed credit report. However, Plaintiff's claim that PNC "notified all of the Reporting Agencies that the negative credit reporting was proper and should not be corrected" after he notified it of the dispute, does not negate Plaintiff's claim that PNC failed to review all relevant information. Plaintiff has plainly alleged that Defendant PNC "failed to adequately review all relevant information," the evidence of which he says is the fact that it continued to erroneously report Plaintiff as delinquent. Plt. FAC [#40] at ¶ 198. Thus, Plaintiff has pleaded sufficient facts to survive Defendant PNC's motion to dismiss this claim.

III.

For the foregoing reasons, Defendants' motions to dismiss allegations in Plaintiff's Complaint are granted in part and denied in part.


**ENTER ORDER:**


**Dated**: Jan. 27, 2014

**Elaine E. Bucklo**
United States District Judge